SENATE, OPINION OF THE JUDGES OF THE SUPREME COURT IN
RESPONSE TO A RESOLUTION OF.

1. The last clause of Art. VI. § 14 of the State Constitution, which provides, that
"No judicial circuit shall be altered or changed at any session of the General
Assembly next preceding the general election for said judges," does not pro-
hibit the passage, at such session, of a law abolishing the old judicial circuits
throughout the State ; and creating a new system *in toto ;* where the law does
not take effect and the new judges are not elected, till the expiration of term
of office of the judges holding under the former system

*To the Hon. the President of the Senate :*

SIR: I have been requested by my associates to reply to a
resolution, adopted by the Senate, "requiring the judges of the
Supreme Court to give their opinion on the question, whether
the General Assembly of this State has the constitutional
power, at its present session, to change the boundaries of the
judicial circuits of this State, with the view of enlarging a
part, at least, of such circuits, and decreasing the number of
said circuits—on condition of making such act, as might now
be passed, take effect as to judicial service on the 1st day of
Jan'y, 1875." The question, as I understand it, involves the
power of the legislature at its present session to pass a gen-
eral law re-districting the State, so far as judicial circuits are
concerned.

The 14th section of the 6th article of the Constitution is
the provision which is supposed to inhibit this power, the
concluding clause of which is: "No judicial circuit shall be
altered or changed at any session of the General Assembly
next preceding the general election for said judges." This
provision is certainly a peculiar one, and its effect may
be conceded to be not very clear. Construed literally, it
might seem to apply to a general law, dividing the State into
new circuits and abolishing the old ones, but this construction
would lead to such difficulties and inconveniencies, not to use
so harsh a word as absurdities, that we are forced to look for
some other interpretation. If this provision were designed
to prohibit the Legislature from re-districting the State into
judicial circuits at a session preceding the general election for

judges, the consequences would be, to say the least, exceedingly embarrassing and perhaps injurious to the public interests, and really subversive of the power manifestly intended to be left with the legislative department. For, if the legislature cannot re-district the State at this session, prior to the general election fixed by the constitution, when can it be done? At the next session, the circuit judges in the old circuits will have been elected for six years, and if the General Assembly then wish to re-district the State, they must pass a law to go into effect six years after its passage. Such a law would be a mere work of supererogation. The Legislature could not foresee the changes in the condition of the State, as to population, wealth and business, six years in advance; and its enactment would be at all events repealable by the succeeding Legislature, and thus the Legislature might go on until the session just preceding another election, and there the power ceases when alone it could be made effectual. And thus, upon this construction, the circuits of judges, fixed by the law first passed after the adoption of the Constitution, would be a finality. We cannot believe that such was the intention of the Constitution, and we are, therefore, compelled to seek some other interpretation, which, though not so consonant with the words, may at least carry out the spirit and intent of this singular inhibition. Why the legislature shall have been prohibited from making changes in judicial circuits at a session just preceding the general election for judges, is only a matter of conjecture. Such conjecture must necessarily be based upon a belief, that the prohibited power was liable to abuse. It may have been thought, that, if the power to change the circuits, in which elections for judges were to be held, was allowed, it might be abused to provide for some legislative favorite, or to get rid of some obnoxious judge; and by adding counties to the circuit or taking counties from it, this purpose could be accomplished. I am unable to conjecture any other reason for such a provision. This reason, it will be perceived, applies only to special changes in particular circuits, when the circuits are left in existence and judges are still to be elected for them. "No judi-

cial circuit shall be altered or changed at any session of the General Assembly next preceding the general election for said Judges." That is, the circuit cannot be changed, when a judge of that circuit is to be elected, and the circuit is still, in a modified form, retained. Does this prevent or prohibit the adoption of a new system *in toto?* If the old circuits throughout the State are abolished, such abolishment to take effect, as suggested by the resolution, on the 1st day of January, 1875, and no provision is made for any elections in the circuits as they now stand, but such elections are expressly or impliedly prohibited, and elections are provided for in the new circuits in Nov., 1874, I am unable to perceive any motive or reason that could have prompted the framers of the Constitution to inhibit such a law.

The circuits, as they now exist, are not changed, but totally abolished. The judges continue to perform their functions within them until the expiration of their term of office, and in January, 1875, there are no such circuits in existence, and the terms of the judges in them have expired, and no provision is made for the election of new judges in said abolished circuits.

What motive could be suggested for prohibiting the Legislature from re-casting the judicial circuits in the State, by a general law, at a session just anterior to the elections? It would seem, for various reasons readily occurring to any one, to be the most appropriate time for such a law. We cannot believe, that after the Legislature has once designated the number of circuits and their boundaries, that it was intended that the number could never afterwards be diminished or increased; yet a diminution of the number of the circuits, after the election of judges in them for six years, results in burthening the State treasury with the salary of all the judges, who, by the re-distribution of circuits, have no duties to perform. It is not necessary for us to say, in this opinion, that the abolishment of a circuit leaves the tenure of the judge untouched and his right to a salary still valid. This question was discussed in the case of The State to the use of Vail vs. Draper, 50 Mo., 354, and various authorities are cited to show that such is

the law. But the question was not decided there, nor is it necessary to give an opinion here. I only refer to it to show, that a law, re-districting the State into judicial circuits, after the election of judges in the old circuits, would involve embarrassing questions—all of which are avoided by such an enactment as is suggested in the resolution of the Senate.

It is, therefore, the opinion of the judges, that the Legislature, at their present session, have the power to pass such a law as is suggested in the resolution of the Senate, and that the inhibition in the Constitution, which has been referred to, was not designed to apply to such laws, but to special enactments changing circuits with a view to legislate some particular judge out of his circuit or put some particular aspirant in it. The sole object of the laws, which the resolution of the Senate specifies, would be and could only be to effect a change in the policy of the State, as to the number of judicial circuits supposed to be needed, whether an increase or diminution is regarded as most conducive to the public interest.

I am authorized by all the other judges to say that they concur in this opinion.

W. B. NAPTON,

(On behalf of the Supreme Court.)